UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANGEL COLINA CASTRO, et al., *et al.*,

     Petitioner,

  v.

LAURA HERMOSILLO, et al., *et al.*,

     Respondents.

Case No. C26-662-SKV

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS

Petitioners Angel Colina Castro, Dave Jackson, Marsel Berdin, and Ahmed Mohamed are currently detained by United States Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  Petitioners, through counsel, have filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release from immigration detention and injunctive relief.  Dkt. 1.  The petition is supported by declarations from each of the four Petitioners.  Dkts. 2-5.  Respondents have filed a return (Dkt. 9), together with the supporting declarations of ICE Supervisory Detention and Deportation Officer Brett Booth (Dkt. 10) and Respondents' counsel Michelle Lambert (Dkt. 11).  Petitioners have filed a traverse responding to the return.  Dkt. 12.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 1

The Court, having reviewed the parties' submissions and the governing law, GRANTS Petitioners' federal habeas petition, ORDERS that Petitioners be released from detention within 24 hours, and ORDERS that Petitioners may not be re-detained during the pendency of their removal proceedings without first being provided adequate notice of the grounds for re-detention and a hearing before a neutral decisionmaker.

## I.   BACKGROUND

The facts specific to each Petitioner are set forth below.  The undisputed facts common to all Petitioners are that they are noncitizens who were previously detained and released from immigration custody and, after living in the United States for significant periods of time, they were re-detained by immigration officials without notice or an opportunity to be heard on the reasons for their re-detention.

### A.   Petitioner Angel Colina Castro

Petitioner Angel Colina Castro is a native and citizen of Venezuela who entered the United States on January 10, 2023, near Brownsville, Texas.  Colina Castro Decl. (Dkt. 2), ¶¶ 1, 2; Booth Decl., ¶ 4.  On that date, Mr. Colina Castro surrendered himself to Customs and Border Protection ("CBP") officers at the Gateway International Bridge in order to apply for asylum. *See* Colina Castro Decl., ¶ 2; Booth Decl., ¶ 5; Lambert Decl., Ex. A at 2.  A notice to appear ("NTA") was issued charging Mr. Colina Castro with being removable under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA").[1]  *See* Colina Castro Decl., ¶ 2; Booth Decl., ¶ 6 Lambert Decl., Ex. B.  Mr. Colina Castro was paroled into the United States on the date of his entry and was instructed to appear for a hearing before the immigration

---

[1] This section of the INA is codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 2

court in Portland, Oregon on July 25, 2023, but he was not advised of any other conditions of release.  *See* Colina Castro Decl., ¶¶ 2, 3; Lambert Decl., Ex. B.

Mr. Colina Castro thereafter moved to Oregon and he appeared as scheduled before the Portland immigration court where the immigration judge instructed him to file an application for asylum.  Colina Castro Decl., ¶¶ 2, 3.  Petitioner submitted his asylum application to the immigration court in January 2024 and attended his subsequent biometrics appointment as scheduled.  *See id.*, ¶ 3; Booth Decl., ¶ 7.  In addition, while on release Petitioner received work authorization, found a job as a delivery driver, and made friends near his home in Oregon.  Colina Castro Decl., ¶ 5.

On January 19, 2026, while at a Walmart store picking up an order he was to deliver, Mr. Colina Castro was approached by ICE officers and arrested.  Colina Castro Decl., ¶ 7; Booth Decl., ¶ 8.  The record indicates that Mr. Colina Castro was re-detained during an operation targeting individuals with no legal status but provides no additional information regarding the reasons for his re-detention.  Booth Decl., ¶ 8.  Following his arrest, Mr. Colina Castro was first taken to the ICE facility in Portland, Oregon, and he was then transferred to NWIPC, where he remains.  *See* Colina Castro Decl., ¶ 7; Booth Decl., ¶ 9.

**B.    Petitioner Dave Jackson**

Petitioner Dave Jackson is a native and citizen of Haiti who entered the United States on or around August 8, 2023, at Miami, Florida.  Jackson Decl. (Dkt. 3), ¶¶ 1, 2; Booth Decl., ¶ 13.  After arriving at the Miami International Airport, Mr. Jackson was interviewed by CBP and was thereafter released on Haitian Humanitarian Parole.  *See* Jackson Decl., ¶ 2; Booth Decl., ¶ 14; Lambert Decl., Ex. F at 3.  According to Mr. Jackson, the officers did not explain any conditions regarding his parole before allowing him to leave the airport.  Jackson Decl., ¶ 3.  Mr. Jackson

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 3

thereafter settled in Florida for a short period of time before moving to Oregon. *Id.* In or around September 2023, Mr. Jackson was granted a work permit based on his humanitarian parole, and he subsequently got a job at an Amazon warehouse in Oregon. *Id.*

On August 27, 2024, Mr. Jackson applied for Temporary Protected Status ("TPS") for Haitians with United States Citizenship and Immigration Services ("USCIS"), though it appears the application was never processed. *See* Jackson Decl., ¶ 4; Booth Decl., ¶ 15. USCIS terminated Mr. Jackson's Haitian Humanitarian Parole on June 13, 2025 (*see* Booth Decl., ¶ 16; Lambert Decl., Ex. G), and a "final hold" was placed on his TPS application on December 12, 2025 (Booth Decl., ¶ 15).

On December 26, 2025, while Mr. Jackson was parked in the parking lot at his workplace, he was approached by ICE officers and arrested. Jackson Decl., ¶ 5; Booth Decl., ¶ 17. Mr. Jackson asked why he was being arrested but received no answer. Jackson Decl., ¶ 5. The record reflects that Petitioner was re-detained during an operation targeting individuals with no legal status, after ICE officers ran Petitioner's license plate and determined that Petitioner had no immigration status in the United States. *See* Lambert Decl., Ex. F at 2. The record further reflects that when Petitioner was processed following his arrest it was then discovered that his Haitian Humanitarian Parole had been terminated in June 2025.[2]

On the day of his arrest, Mr. Jackson was served with a NTA charging him with being removable under INA § 212(a)(7)(A)(i)(I). Booth Decl., ¶ 19; Lambert Decl., Ex. J. Following his arrest, Mr. Jackson was first taken to the Portland ICE office, and he was then transferred to NWIPC, where he remains. *See* Jackson Decl., ¶ 5; Booth Decl., ¶ 18.

---

[2] The Court observes that the Notice of Termination of Parole issued by the Department of Homeland Security in June 2025 was a blanket termination of parole for individuals paroled into the United States under the Cuban, Haitian, Nicaraguan, and Venezuelan ("CHNV") parole programs that began in 2022 and 2023. Lambert Decl., Ex. G.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 4

**C.      Petitioner Marsel Berdin**

Petitioner Marsel Berdin is a native and citizen of Russia who entered the United States on or about December 27, 2022, near Calexico, California.  Berdin Decl. (Dkt. 4), ¶ 2; Booth Decl., ¶ 23.  Mr. Berdin entered the United States in order to apply for asylum and soon after entering he was apprehended by United States Border Patrol ("USBP") agents.  Berdin Decl., ¶ 2; Booth Decl., ¶ 24.  Mr. Berdin was processed for expedited removal pursuant to INA § 235[3] and was referred to USCIS for a credible fear interview.  Booth Decl., ¶ 24; *see also* Lambert Decl., Ex. L.  Mr. Berdin had his credible fear interview with USCIS on January 11, 2023, and USCIS found Mr. Berdin had a credible fear.  *See* Booth Decl., ¶¶ 26, 27.

On January 15, 2023, USCIS issued an NTA charging Mr. Berdin with being removable under INA §§ 212(a)(7)(A)(i)(I) and 212(a)(6)(A)(i)[4].  Booth Decl., ¶ 29; Lambert Decl., Ex. M.  However, the NTA was apparently not served on Mr. Berdin and was never filed so Petitioner was not placed in immigration proceedings at that time. *See id.*; *see also*, Berdin Decl., ¶ 2.  Mr. Berdin was released on parole on January 20, 2023.  Berdin Decl., ¶ 2; Booth Decl., ¶ 28; *see also* Lambert Decl., Ex. N.  Following his release, Petitioner moved first to Philadelphia and then to Washington.  Berdin Decl., ¶ 2.  After moving to Washington, Petitioner regularly checked-in with immigration officers at the ICE office, as directed at each appointment.  *Id.*, ¶ 3.  On July 24, 2023, Mr. Berdin filed his asylum application with USCIS, and he thereafter received a Receipt Notice, a work permit, and a social security number.  *See* Berdin Decl., ¶ 4; Booth Decl., ¶ 30.

In April 2024, Mr. Berdin had a verbal disagreement with his roommate, and he was subsequently arrested by the Seattle Police Department ("SPD") on a charge of felony

---

[3] This section of the INA is codified at 8 U.S.C. § 1225.
[4] This section of the INA is codified at 8 U.S.C. § 1182(a)(6)(A)(i).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 5

harassment - domestic violence.  *See* Berdin Decl., ¶ 5; Booth Decl., ¶ 31.  Mr. Berdin spent a day in jail before being released, the charge was ultimately dismissed, and Mr. Berdin moved out of the residence he had shared with that roommate.  Berdin Decl., ¶ 5.

On December 4, 2025, Mr. Berdin went to the ICE office in Tukwila, Washington, to provide ICE with his new address as he had recently moved to a different address in Seattle.  *See* Berdin Decl., ¶ 6.  Mr. Berdin was at that time detained by ICE officers and advised that it was because of his arrest in April 2024.  *Id.*, ¶ 7; Booth Decl., ¶ 32.  According to Mr. Berdin, approximately a month-and-a-half to two months before he was re-detained, he appeared for an ICE appointment and was advised at that time that "everything was fine" and no reference was made to the April 2024 incident involving his roommate.  Berdin Decl., ¶ 7.  Petitioner was transferred to NWIPC on December 4, 2025, where he remains.  *Id.*, ¶ 8; Booth Decl., ¶ 32.

Mr. Berdin was served with a new NTA on January 19, 2026, charging him with being removable under INA §§ 212(a)(7)(A)(i)(I) and 212(a)(6)(A)(i), and he was placed in immigration proceedings.  Booth Decl., ¶ 33; Lambert Decl., Ex. R.  On March 9, 2026, Mr. Berdin filed his application for asylum with the immigration court.  Booth Decl., ¶ 35.

**D.     Petitioner Ahmed Mohamed**

Petitioner Ahmed Farag Mohamed Farag Mohamed is a native and citizen of Egypt who entered the United States on or about April 1, 2024, near Tecate, California.  Mohamed Decl. (Dkt. 5), ¶¶ 1, 2; Booth Decl., ¶ 38.  On the same date, Mr. Mohamed was apprehended and arrested by USBP agents, and he was taken to a Border Patrol facility for processing where he expressed a fear of returning to Egypt.  Mohamed Decl., ¶ 2; Booth Decl., ¶ 39.  On April 2, 2024, Mr. Mohamed was served with an NTA charging him with being removable under INA § 212(a)(6)(A)(i), and he was placed in immigration proceedings.  Booth Decl., ¶ 40; Lambert

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 6

Decl., Ex. V.  Mr. Mohamed was released on an Order of Recognizance ("OREC") on the same day, and he thereafter settled in Jersey City, New Jersey.  *See* Mohamed Decl., ¶ 2; Booth Decl., ¶ 39; Lambert Decl., Exs. U, W.  Mr. Mohamed filed an application for asylum and related relief with the immigration court on November 7, 2024.  Mohamed Decl., ¶ 4; Booth Decl., ¶ 41.

Mr. Mohamed was granted employment authorization in May 2025, and he thereafter worked as a truck driver.  Mohamed Decl., ¶ 5.  On November 21, 2025, Mr. Mohamed flew from New Jersey to Spokane, Washington, for the purpose of transporting a "spot load" from Washington to Troy, Montana.  *Id.*  On the morning of December 8, 2025, while driving in Montana, Mr. Mohamed was stopped by regular law enforcement, apparently for speeding, but was let go.  *See id.*, ¶ 6; Lambert Decl., Ex. X at 2.  Later that morning, USBP agents contacted Mr. Mohamed at the United States Post Office in Troy, Montana and, after conducting a field interview, arrested Mr. Mohamed for being in the country illegally.  *See id.; see also* Booth Decl., ¶ 44.  According to Petitioner, he told the agents he had a work permit and a social security number but they still re-detained him without explaining the reason for his re-detention.  Mohamed Decl., ¶ 6.

Petitioner was served with another NTA, which was not accepted by the immigration court as it was a duplicate NTA alleging the same charges as the previously issued NTA.  Booth Decl., ¶ 46.  On December 9, 2025, Mr. Mohamed was transferred to NWIPC, where he currently remains.  *Id.*, ¶ 45; Mohamed Decl., ¶ 8.  Following his arrest and re-detention, Petitioner's immigration proceedings were moved from the Newark, New Jersey immigration court to the Tacoma immigration court.  Booth Decl., ¶ 47.  On January 27, 2026, Petitioner appeared for a bond hearing before the immigration court at which he was represented by counsel.  *Id.,* ¶ 48.  The immigration judge concluded she lacked jurisdiction to grant bond on

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 7

the grounds that Mr. Mohamed was subject to mandatory detention.  *See id*.; Lambert Decl., Ex. Y.  The immigration judge ordered in the alternative that Mr. Mohamed was a flight risk.  *See id.*

## II.     LEGAL STANDARDS

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.     DISCUSSION

Petitioners here claim that Respondents violated their procedural due process rights under the Fifth Amendment when Respondents re-detained them without providing written notice and a meaningful opportunity to be heard by a neutral decisionmaker prior to their re-detention.  *See* Dkt. 1 at 2-3, 17-18.  Respondents argue in response that Petitioners' re-detention is lawful, suggesting that there is a statutory basis for Petitioners' detention and that pre-deprivation hearings were not required under the applicable statutes and regulations.  *See* Dkt. 9.

//

//

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 8

**A.     Due Process**

The Fifth Amendment forbids the government from depriving any person of "life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)).  Due process is "flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  It "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

The Supreme Court, in *Mathews*, established a three-part test for determining whether a particular government action comports with due process.  The *Mathews* test balances the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.  In *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022, the Ninth Circuit assumed without deciding that the *Mathews* test applies in the immigration detention context. *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases employing the *Mathews* factors in similar immigration contexts).  Petitioner asserts the same framework and principles apply here, and Respondents do not appear to dispute this assertion.  Thus, the Court now turns to consideration of the *Mathews* factors.

As to the first *Mathews* factor, Petitioners have a strong liberty interest in not being detained.  The Supreme Court has recognized that "[f]reedom from bodily restraint has always

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 9

been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Hamdi*, 542 U.S. at 529 (the interest in not being detained "is the most elemental of liberty interests"). This liberty interest exists even when release is conditional. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases). Respondents properly acknowledge in their return the "weighty liberty interests implicated by the Government's detention of noncitizens." Dkt. 9 at 13 (quoting *Reyes v. King*, 2021 WL 3727614, at *11 (S.D.N.Y. Aug. 20, 2021)). The Court finds that Petitioners have a strong private interest in their continued liberty and, thus, the first *Mathews* factor weighs in their favor.

As to the second *Mathews* factor, the procedures used to re-detain Petitioners created a high risk of erroneous deprivation of their liberty. Three of the Petitioners here were released on humanitarian parole under 8 U.S.C § 1182(d)(5): Mr. Colina Castro, Mr. Berdin, and Mr. Jackson. The final Petitioner, Mr. Mohamed, was released on conditional parole, *i.e.*, OREC, under 8 U.S.C. § 1226(a)(2)(B). Respondents argue as to Mr. Colina Castro and Mr. Berdin that they were granted parole only for a one-year period, that they were informed of the expiration date at the time parole was granted, that at the end of the one-year period their parole automatically terminated with no written notice required, and that these Petitioners therefore received the required process.[5] *See* Dkt. 9 at 13-14. Respondents argue with respect to Mr. Jackson that he received written notice of the termination of his parole in June 2025 and was issued a notice to appear upon his re-detention, thus affording him the required process. *Id.* at

---

[5] Notably, despite Respondents' arguments that Petitioners were informed of their parole expiration date at the time parole was granted, Respondents appear to acknowledge that Petitioners Colina Castro and Berdin may not have actually received documentation informing them of their parole expiration date. *See id.* at 14 n.6.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 10

14. Respondents argue with respect to Mr. Mohamed that he is subject to mandatory detention under 8 U.S.C. 1225(b)(2)(A) and, thus, a pre-detention hearing was not required before he was re-detained. *Id.*

To begin, the Court rejects Respondents' suggestion that Petitioners' re-detention is lawful because hearings were not required under the applicable statutes and regulations. As Petitioners correctly note, multiple courts in this district have rejected similar arguments. *See, e.g., Shinwari v. Hermosillo*, 2026 WL 262605, at *3 (W.D. Wash. Jan. 30, 2026) (citing cases) (granting habeas relief to two parolees); *see also E.A. T.-B.*, 795 F. Supp. 3d at 1323 ("Petitioner does not claim to be entitled to a hearing consistent with a particular statute: he argues that the Due Process Clause requires it."); *Francois v. Wamsley*, 2025 WL 3063251, at *3 (W.D. Wash. Nov. 3, 2025) ("Any argument that ICE acted within its authority has no [effect] on a claim contending that detention violates Constitutional Due Process.").

Respondents' suggestion that hearings were not required prior to Petitioners' re-detention fails for another reason as well. Before a noncitizen may be released from immigration custody, on either humanitarian parole or OREC, a determination must be made that the noncitizen presents neither a danger to the community nor a flight risk. *See* 8 C.F.R. § 212.5(b); 8 C.F.R. § 1236.1(c)(8). Where, as here, a petitioner's release was necessarily based on consideration of such factors, "arresting and re-detaining [a petitioner] . . . without first reconsidering those factors poses a significant risk of an erroneous deprivation of [the petitioner's] liberty interest in continued release." *See E.A. T.-B.*, 795 F. Supp. 3d at 1323. There is no indication in the record that these factors were considered prior to Petitioners' re-detention. Indeed, it appears from the record before the Court that Petitioners' arrests were, for lack of a better term, arbitrary.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 11

Mr. Colina Castro and Mr. Jackson were both re-detained at their places of employment during targeted enforcement operations apparently focused on identifying and detaining individuals with no legal status in the United States.  *See* Lambert Decl., Exs. C, F.  There is no allegation that either of these Petitioners violated any of the conditions of their release prior to their release.  And, to the extent there was any individualized consideration of these Petitioners' circumstances at the time of their re-detention, it was limited to an assessment by ICE officers that neither had lawful status in the United States.  Mr. Berdin was re-detained after he went to a local ICE office to update his address and ICE officers discovered through "routine system queries" that he had been arrested a year and a half prior by SPD.  *See id.*, ¶ 6; Lambert Decl., Ex. O at 2.  Those system queries apparently did not reveal that the charges against Mr. Berdin had been dismissed.  In each of these instances, additional safeguards would have decreased the risk of arbitrary or otherwise unlawful detention.

Notably, though Respondents emphasize the point that the parole of each of these three Petitioners had expired or been terminated prior to their re-detention, none of these Petitioners was re-detained because of the expiration or termination of their parole.  Courts in this district have found that even when the express terms of a noncitizen's parole notice allows for discretionary termination or expiration, this "does not somehow obviate the need for the Government to provide an individualized hearing prior to re-detaining the parolee." *Shinwari*, 2026 WL 262605, at * 4 (quoting *Ramirez Tesara*, 800 F. Supp. 3d at 1136).

Mr. Mohamed, who had been released on OREC, was also re-detained, while working, based solely on his immigration status and not based upon any alleged violation of the conditions of his release.  *See* Lambert Decl., Ex. X.  As Respondents acknowledge in their return, in a prior case involving a similarly situated Petitioner, this Court found that the risk of an erroneous

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 12

deprivation was high absent a pre-deprivation hearing. *See Subham v. Noem*, 2026 WL 497101, at * 3-5 (W.D. Wash. Feb. 23, 2026). Respondents note that here, unlike in *Subham*, Mr. Mohamed was afforded a bond hearing before an immigration judge after he was re-detained, and bond was denied. Dkt. 9 at 15. Respondents recognize, however, that the fact Mr. Mohamed was afforded a subsequent bond hearing does not impact the Court's prior due process analysis in *Subham*. *Id.* This Court concurs and concludes there is no reason to depart from its prior analysis. The Court thus finds that the risk of an erroneous deprivation of liberty was high in Mr. Mohamad's case absent a pre-deprivation hearing.

For the reasons set forth above, the Court finds that the second *Mathews* factor favors Petitioners.

As to the third *Mathews* factor, the government's countervailing interest in detaining Petitioners prior to a hearing is minimal. Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community. *Zadvydas,* 533 U.S. at 690 (government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community"). While providing a hearing before re-detaining an individual would require expending resources (money and time), such costs are outweighed by the risk of erroneously depriving an individual of a significant liberty interest. *See*, *e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Though requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing no pre-detention process is constitutionally deficient.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 13

In sum, all three *Mathews* factors weigh in Petitioners' favor and, thus, this Court finds Petitioners should be immediately released from custody.

**B.    Injunctive Relief**

Petitioners, in conjunction with their request for release from custody, seek an order enjoining their re-detention absent constitutionally adequate process during the pendency of their removal proceedings.  Dkt. 1 at 18-19.  Respondents argue in response that Petitioners fail to allege that re-detention is likely to occur without proper notice and an opportunity to be heard, and that such an assertion would, in any event, be speculative.  Dkt. 9 at 2.

Federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020).  "Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has 'the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them,' 'irrespective of the accompanying habeas petition.'" *Francisco Lorenzo v. Bondi*, 2026 WL 237501, at *6 (W.D. Wash. Jan. 29, 2026) (quoting *Roman*, 977 F.3d at 941–42).

Petitioners here have already been detained by ICE without process on one occasion, and their petition highlights a clear pattern of re-detention by Respondents without sufficient process. *See* Dkt. 1.  Moreover, as another court in this district recently observed when presented with a similar request for relief: "[F]or months, courts in this district have repeatedly found that the Government's conduct in revoking release and re-detaining non-citizens without pre-deprivation process is unconstitutional.  The Government has chosen to "respectfully disagree" with those orders and to continue its current practices." *Espinoza Palacios v. Hermosillo*, 2026 WL 686138, at *10 (Mar. 11, 2026).  The court went on to grant the requested injunctive relief as have other

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 14

courts in this district.  *See id.* at *10-11; *see also E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Caisa Telenchana v. Hermosillo*, 2026 WL 696806, at *13-14 (W.D. Wash. Mar. 12, 2026); *Ortiz v. Hermosillo*, 2026 WL 607672, at *5-7 (W.D. Wash. Mar. 4, 2026); *Arrioja Blanco v. Hermosillo*, 2026 WL 548056, at *4 (W.D. Wash. Feb. 27, 2026); *Shinwari*, 2026 WL 262605, at *4; *Cabrera Perez v. Hermosillo*, 2026 WL 100735, at *6 (W.D. Wash. Jan. 14, 2026).  This Court joins these other courts in concluding that the requested injunctive relief is appropriate.

### IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS the habeas petition (Dkt. 1) and ORDERS that Petitioners be RELEASED from immigration detention within 24 hours.  Respondents shall file a certification within 48 hours that Petitioners have been released.  Upon Petitioners' release, Respondents shall return to Petitioners any personal property, including personal identification documents (other than a passport) and employment authorization documents.

The Court further ORDERS that Petitioners shall not be re-detained during the pendency of their removal proceedings without first being provided written notice and a hearing before a neutral decisionmaker.  Finally, any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 25th day of March, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 15